I'd like to reserve two minutes for rebuttal, if I may. You look at the clock, sir. Thank you. At the outset, I think one is struck by the fact that Ms. Rich sold her 45 percent interest in after immediate dimensions for an agreed purchase price of $750,000, having- Plus delivery of billboard licenses. That's what the contract specifies, but she gave up 45 percent interest in the corporation. Which was worth what? Without billboards. Beg your pardon? What was the value of the stock without billboards behind it? All it was without any assets is just a piece of paper. Then how is it that the jury- You don't get to ask questions. Beg your pardon? You don't get to ask a question, do you? I never ask a question you don't know the answer to. I would argue that if, in fact, the company was worth nothing without the permit sets, that the agreement would not have been structured as it was with her receiving $750,000 for the stock. And again, the agreement spent- Wait, wait. She didn't get $750,000 for the stock. She got $750,000 for the stock to be paid pursuant to a purchase plan. And the purchase plan was clearly in consideration of the payment by the OMD. Certainly, in lockstep with the delivery of those- I would certainly concede that the timing of the payments is certainly described as based upon the delivery of the permit sets. But the end result is that she receives $100,000 only. You can argue as to what the consideration is that she gave up the value of that consideration, the value of the stock, in other words. But you did argue that, that you had a jury, and the jury looked at all the evidence after- But then the jury- And then came back with a verdict. I don't know what you're complaining about. Because the jury is allowed to award $340,000 in damages based on the failure to deliver the permit sets, which based on this Court's reasoning, as I understand it so far, is that the stock is worth nothing. So, in other words, the- I know the stock is worth something when it's pursuant to what the package is. But those stock permits actually, I mean, excuse me, those billboard permits were billboards to generate income. So didn't the failure of the transaction result in loss of future income? It resulted in loss of future income. But what it's not taking into account is the amount, the basis of the Respondent in that case. How could you say that it didn't take into account? You just don't like the way they accounted for it. I mean, did you present evidence on this to the jury? Yes, Your Honor. Were the jurors asleep? Well, Your Honor, our position obviously on the briefs is the jury was not properly advised, was not properly instructed. It should have been advised that it was a condition precedent, that you wanted to direct the verdict under your contract interpretation. What you call an instruction is not really an instruction. This is not a situation where you're saying, well, we want to give the jury the law so it can make a factual determination. What you term an instruction is basically is a partial motion to summarize judgment. You want the issue taken away from the jury. You want the jurors told, when conducting your deliberations, you may not treat this as a condition precedent. So this is not your typical instruction where you say, well, you know, we've got to instruct the jury consistent with our theory of the case. This was really a mini-summary judgment motion you were making. But that's assuming that the contract is ambiguous. No, no. That's your substantive argument as to why you're entitled to it. Right. But this is not a jury instruction case. This is sort of a sparse summary judgment. You want the court to take this determination away from the jury and make it itself. That's really what you're saying. I'm saying that the court should have instructed, should have made a determination of the issue prior to charging the jury with a decision as to what the intent of the parties was, perhaps. But to allow a party to pay only $100,000 for property, but to get damages of $340,000 back, having only invested $100,000 is absurd. They don't have that. They have not – they don't have any basis in the damage claim, essentially. What did they get for their $100,000? They got at least three permit sets. Three. Okay. Worth how much? In the record, there's $40,000 per permit set. It's $120,000. Okay. So – Well, no, this is not worth. That's what they were paying. Yes. On the plan, it doesn't mean that that's the actual value. Very well. If that's – I don't know what a going business involves where they – you know, where you have 19 of these things, and you get some, but you don't get the other. Ultimately, they only got seven of them at the most, right? Nine, I believe, in the record. I think it was nine. I think you're – It may be. It may be over 67. I think you said seven. But, again, they only paid – Do you agree if I – They only paid $100,000 for it. And if, as the Court suggests, it's not an issue of timing, but an issue of a conditioned precedent, then the value of the stock would be tied more closely to the value of the permit sets. Well, you argued all that, didn't you? Now, as this case was submitted – as this case was submitted to the jury on the breach of contract claim, there was evidence as to how much was lost by not having the contract fulfilled. And there was testimony of much as a million dollars. Now, I don't know what the jury actually factored in when they came up with this $340,000, but they did have evidence before them of a very substantial loss to the corporation because of the breach of contract. Now, you and I may not agree that that was the right amount that they arrived at, but I don't think we can challenge that. So your only challenge is as to whether you should have been granted this mini-summary judgment, as I see it. And you need to persuade us from the case law that the district court was wrong in the way it instructed the jury. Well, Your Honor, I believe that the contract – I believe that the contract – by the title of the contract, the way the first paragraph is drafted, the way the duties are laid out, that as a matter of law, that the performance by Ms. Rich's husband is not a conditioned precedent to her receiving payment on the – for the purchase of stock, but it's solely an issue of timing. And there is no – again, there is no – as pointed out at the briefs – Can you explain what you mean? Take the paragraph and explain how that is an issue of timing. What triggers the time? The – well, the contract in numerous places – and I'll go through in each instance if the Court would like – defines Mr. Let's just – I'll focus you on my question so I understand what you mean by timing. You say the first paragraph, which says she agrees to sell her shares and so on and so forth, and at the end it says, OMD agrees to pay Rich $750,000 according to the payment plan and the terms and conditions set forth below. So everything else that follows is a condition to receipt of the $750,000, correct? No. Well, what is – well, that's the plain language, the $750,000 according to the payment plan and terms and conditions set forth. That's the promise by OMD. OMD, Nevada, agrees to pay Rich and Herson $750,000 according to the payment plan and the terms and conditions set forth below. Now why doesn't that condition their promise? Because it doesn't state that that is an expressed condition and that there will be a forfeiture of the remainder of the purchase price. Oh, but that – now you're arguing – you said it's unambiguous and that it should be construed in your favor and that all these are timing provisions. So if I take correctly, you're saying then the payment plan to Rich, paragraph 4.3, within 14 days after receipt of a permit set for each location is a timing question. So what is it that's so clear that she's entitled to $750,000 based on the payment plan and that timing provision? Your Honor, the – what I was getting at was that the earlier paragraphs of the – the paragraph 1 of the document, the title of the document, the first – the introductory paragraph of the document describes Mr. – her husband as an independent contractor. He's receiving the permit. What has that got to do with anything, counsel? This is an integrated contract. All of the – you don't interpret contracts by the title. You look at all of the – just by the title. You look at the language. So don't – give me the – the qualifier on the – you jumped off to it, it doesn't contain certain language and, therefore, it's a forfeiture, but that's not the language of the contract. Because, Your Honor, it's drafted by the – by the corporation. Well, that – there's a waiver in the – that's also provided for in the contract. It says it's been drafted by O&D, but that we won't construe it against the drafter. That's – that was agreed to, was it not? It was, but, Your Honor, it's provided for. But O&D did not – O&D did not put in any provision to – to cover the type of – of extreme result that this Court is describing, that Ms. Rich would be out of the stock. But you're – you're – that may be true. That may be true. But that's not an argument that you win on the plain language of the contract. Now you're arguing – you're resorting to the consequences of the plain language of the contract. I'm suggesting that the contract drafted by the corporation does not – does not provide the results you're describing, and it makes no sense in light of the fact that Herson is described in numerous instances as an independent contractor and received – receiving separate consideration for getting the permit sets. No, but there was a finding that – that there were – there was certainly evidence that – that she was basically his cash flow, that he was her agent, you know, that these were not sort of separate people, that he was sort of the mastermind behind the whole thing, and she was a name, and he tried to get sort of out from under with a bankruptcy. There was a lot of stuff at the end of the jury that – that just simply undermines the idea that these were sort of separate agreements. Your Honor, I'm out of time, but just one other point, if I may, on the jurisdiction issue, which is raised in the fourth – in the fourth argument in the appellate brief, the jury was allowed to hear evidence, and it may have affected the – the determination as to – as to this issue of how much money Ms. Rich was entitled to on what was owed to the Oregon Corporation, as pointed out in the brief, that destroyed diversity, and I think it impacted the entire – the entire case, and is probably – probably the strongest point in – in the argument. I just – the – the contract is – is perhaps an unusual one. I don't think it's ambiguous, but the result that – the result this Court has reached – or the result the trial court reached, the jury reached, I think, is just fundamentally unfair. Having – having received only $100,000, she's liable for $340,000 in damages. I've said it a couple of times. Thank you. Thank you. Could I ask one question? There's a provision 5 in the contract which required the Corporation to transfer the Las Vegas licenses and permits. Was that ever brought into any of the deliberations of the jury or any testimony about it or anything? Your Honor – It seems to be kind of dangling out there. I don't believe it was dealt with, Your Honor. Pardon? I do not believe it was dealt with. Thank you. Thank you. We'll hear from the other side. May it please the Court, Jonathan Whitehead on behalf of the appellees, Outdoor Media Dimensions, and Alexander Kim, to address your first question, Your Honor, that you just asked. That issue was raised at trial. Both myself and Mr. Ryan were the trial counsel for the defendant's counterclaimants. And it was an issue that was raised both by the plaintiffs and cross-examined by us. And just to point out one thing before I get to some of the ambiguity and some of the issues, is the bulk of this trial was about disagreement. And when you look at the appellant's opening brief, the first issue they say is it should have been found by the Court that this was a several obligation. One thing that is devoted from both of our briefs is the fact that shortly after the complaint was filed, plaintiffs filed a motion for summary judgment on the contract. And the issue was presented to the district court, Howard D. McKibbin, and the court found that there were factual disputes concerning whether there was a condition proceeding. So it was ruled on a matter of summary judgment at the very beginning of the case. The parties then consented to the magistrate to try the case, and then we were in front of the Honorable Bob McQuaid. And at that point in time, he handled all the discovery and all the way through. But addressing their arguments, the first thing they say is, looking at the contract and citing Williston, it's clear that the obligations were several and not joint. With all due respect to counsel, I disagree. First of all, I hope you won't use up your entire time on this argument. You want to address the diversity issue. Sure. But before you get there, I you say that this issue about the Section 5, which required the transfer, was brought up before the jury. But how were they instructed on it? And what happened? Nothing? The jury came back and found that the plaintiffs were not damaged, that they materially breached the agreement, and that my clients were damaged. Yes. And that's they had general jury instructions on breach of contract, which allowed both parties to argue their sides as to the interpretation of the contract. So your position is that your client was excused from any performance? That's correct, Your Honor. Okay. Turning to the issue of diversity, Your Honor, with all due respect, I do not think it is an issue of diversity, and this is why. There are two parties who got an award of the same amount, which is the same verdict for the $300,000 conversion. That's what we're talking about. And at trial, what was argued by the plaintiff counter defendants was that we were seeking to take monies that had been coming out of the Oregon Corporation and include that in our claim. When the trial exhibit that went in concerning the documents showing portions of the conversion, the district court was very careful that any document related to the Oregon Corporation did not come into evidence. That was a heated issue that went back and forth. So the trial exhibit that went forward that had portions of these credit card receipts and the various other things that were showing the misappropriation of the funds were solely related to the Nevada Corporation. I thought the Nevada Corporation didn't have a credit card. That is not my recollection, Your Honor. My recollection was there were multiple credit cards, multiple debit transfer cards, and the testimony by Carl Parks had to do with outdoor media dimensions. The Nevada Corporation is what was being addressed because that was the party in front of the court. Now, was the Nevada Corporation properly incorporated in Nevada? I believe it was. And the reason why I say that, Your Honor, is the history of this case is that the person's father, who was an attorney licensed up in Oregon, and the formalities of corporations, if I were to cross every team, were never taken care of for either of these entities. Well, was there a filing with the Nevada Secretary of State or whoever? Yes, there was. So it was a valid Nevada Corporation, but the books were not maintained in the manner that I would have recommended a client to do. Apparently, Herson said that only the Oregon Corporation had a credit card. This is at ER 375. How do you know that, Mr. Herson, as you said here today, that these were all paid by the Oregon Corporation? The answer is because the Nevada Corporation did not have a credit card, only the Oregon Corporation. And you're referring to Mr. Herson's testimony? Yes. Okay. So there's that evidence. I mean, I realize there may be evidence on the other side. Two points about that, Your Honor. The first thing is there was contrary evidence from Carl Park, who was the comptroller, who was also a defendant because he'd been sued for battery by Mr. Herson, and so he's a party. Yeah, I saw the battery claim. What happened there? A jury. It didn't go to the jury? It went to the jury, and it was a defense verdict. Okay. So their testimony was no. There were a lot of other credit cards that he was taking out unbeknown to our clients, including lines of credits that they had paid off and closed out, and, in fact, sued our clients over those lines of credits, and we had to present evidence to counter that they had taken those monies and used them for personal use. The second thing is, and what you saw the district court state in the order was, throughout the entire trial, Mr. Herson was severely impeached, and his credibility was not very strong by the time they got to the jury, as was his wife. And, in fact, if you see the district court's memorandum order denying the motion for a new trial, he makes a strong point about the fact that they were seriously impeached throughout the entire trial. So the weight to give his testimony there, Your Honor, I think is suspect and should be, the deference should go to the jury on that issue. Unless there are any other questions for the court, from the court, I think my time is running down. Thank you. Is that Mr. Ryan over there? Mr. Ryan, you assigned a certificate of compliance on page 44 of the brief, certifying the brief as 14-point type. Have you looked at the footnotes on this brief? Look at page 8, for example, footnote 7. Yes, sir. Does that look like 14-point type to you? As far as the footnote? Yes. Yes, Your Honor, it does not. Okay. When you certify something to a court, you have to be very careful. You will not do this again. Thank you, Your Honor. Okay. Read our rules. Read the advisory committee, Northern Rules. It's quite clear that footnotes are included. I don't know what your time status is. We'll give you a couple minutes for rebuttal. Thank you. I'll just go to the jurisdiction issue. There is evidence in the record, including the trial. Two minutes. Thank you, Your Honor. The trial court's decision on the motion for new trial, that the jury did hear evidence regarding the debts owed to the Oregon Corporation. As pointed out in the trial brief, the party claiming the damages has the burden of proof. In this case, Mr. Park, Mr. Kim, took the stand, and the trial court acknowledges the unclear as to whether the money was taken from the Oregon Corporation or the Nevada Corporation. I believe that the entire proceeding was tainted by the fact that the court did not exclude evidence regarding the Oregon Corporation. There is a reference contrary to Mr. Park. Well, Mr. Park certainly testified that money was taken from the corporation. And he could have been asked more specifically which, you know, there's some ambiguity as to whether it was the Nevada Corporation or the Oregon Corporation. Your side could have asked him about that. But the trial court wouldn't have had jurisdiction. The trial court, being a federal court, is a court of limited jurisdiction and would have had some obligation to determine that it had a jurisdiction to hear the matter. No, on the contrary. There's no duty on the part of the court to examine witnesses. I mean, if you think there's a jurisdictional defect, you can bring out evidence that shows that there was a jurisdictional problem. And then the court, including this court, in the first instance, if there is a record that shows a problem with jurisdiction, we can take into account. But that's quite different from saying the court has to go chasing down evidence that might prove lack of jurisdiction. I've never heard of anything like that. Now, you started Vic's litigation. You filed the complaint in federal courts. No, I did not, Your Honor. I was just appellate counsel. But Kimberly Rich was the original plaintiff. That's correct. That's right. Because the money was owed by the Nevada Corporation. Mr. Clark brought in the counterclaim in which he says money was taken from the Nevada Corporation, but, for example, a 1099 was submitted in evidence in this case, which is from the Oregon Corporation. The trial court also acknowledged that the Nevada Corporation was not fully operational, and therefore, many of the expenses were being paid by the Oregon Corporation. I think there was such an intermingling of the payments and expenses that I believe that the trial court was deprived of jurisdiction, and it was improper to allow the court to offset one claim against the other and determine whether Ms. Rich was entitled to compensation for her stock. Okay. Thank you. The case is audio. Thank you, Your Honor.
judges: B. Fletcher, Kozinski, Fisher